■ Russel S. Bernard, Appellant, v Proskauer Rose, LLP, et al., Respondents. [927 NYS2d 655]—

In this action for legal malpractice, breach of fiduciary duty and breach of contract, plaintiff alleges that defendants Proskauer Rose, LLP (Proskauer) and Michael Album (Album),

a partner at Proskauer, failed to adequately advise him regarding his departure from Oaktree Capital Management, L.P. (OCM), a real estate investment hedge fund. Plaintiff alleges that as a result of defendants' negligence he was sued in arbitration by OCM and sustained damages in the amount of $51.5 million, including forfeited incentive fees, compensatory damages paid to OCM, and legal fees.

The following facts are undisputed: In 1995, plaintiff was employed by OCM to develop, manage, and market certain real estate funds. In early 2005, OCM began preparations for a new real estate fund (ROF IV), which, despite being his direct responsibility, plaintiff failed to develop and promote for OCM.

In October 2005, plaintiff made an offer in OCM's name to purchase 60 Main Street, a real estate investment opportunity he first learned of in November 2004. The offer was made without OCM's knowledge or permission, and plaintiff furnished OCM's financial information in support. In November 2005, plaintiff entered into a purchase agreement for the 60 Main Street property in the name of one of his own entities, Westport Property Management, LLC.

On or about November 1, 2005, plaintiff decided to leave OCM. Album, a partner in Proskauer's Employee Benefits and Executive Compensation Group retained by plaintiff in October 2004, began discussions with OCM's general counsel for plaintiff's departure. On November 18, while discussions were ongoing, plaintiff resigned in writing as an employee and principal "effective immediately" and gave 120 days notice of his resignation as a member of OCM. On December 1, 2005, plaintiff issued a press release announcing the formation of Westport.

On December 12, 2005, the Executive Committee of OCM voted to expel plaintiff as a member due to his "abrupt departure and his announcement of the formation of a competing entity," and refused to pay him any incentive fees. Plaintiff initiated arbitration against OCM for recovery of fees he was purportedly owed and other damages. During arbitration, OCM learned of plaintiff's misconduct with regard to ROF IV and 60 Main Street and on November 7, 2006, expelled plaintiff as a member on these independent grounds. OCM counterclaimed for damages on the grounds that plaintiff breached his contractual and fiduciary duties, and misappropriated confidential financial information.

In the interim arbitration award, which was incorporated into the final arbitration award issued July 12, 2007, the arbitrator concluded that OCM was "substantially harmed" by the delayed

launch of ROF IV and the loss of an investment opportunity in 60 Main Street. The arbitrator further found that although plaintiff had resigned, his justifiable expulsion as a member due to his "gross negligence and willful misconduct" was the equivalent of a termination for cause, precluding recovery of incentive fees from OCM. Accordingly, the arbitrator awarded OCM $12,325,250 in compensatory damages for one year of lost ROF IV fees, and $6,740,289 in legal fees.* On March 21, 2008, the Superior Court of the State of California, County of Los Angeles (Kenneth Freeman, J.) granted OCM's petition to confirm the arbitration. That judgment was affirmed on February 22, 2010 in *Oaktree Capital Mgt., L.P. v Bernard* (182 Cal App 4th 60 [2d Dist 2010]).

On March 12, 2009, plaintiff initiated this action alleging, inter alia, that defendants failed to adequately advise him of the risks associated with his departure from OCM to start his own real estate investment firm. In his amended complaint, plaintiff alleges that in October 2004, he contemplated leaving OCM and retained defendants in order to "improve compensation levels [for his] group, and if that could not be done, he wanted to leave [OCM]." Plaintiff claims that he explained to defendants that he wanted to preserve his rights to substantial incentive fees and avoid any liability to OCM due to his resignation. Although plaintiff does not allege that he told defendants about the 60 Main Street opportunity, or that they advised him to purchase the property for Westport, he claims that he informed defendants that he "occasionally purchased properties for his own account, a fact known by OCM."

Plaintiff does not allege that defendants provided him with any guidance with regard to ROF IV until August 2005, when defendants presented him with a "Draft Action Plan" outlining three alternative strategies for exiting OCM. Plaintiff alleges that under the exit plan urged by defendants, he was advised to continue to manage certain funds, but to "*refuse* to work on and develop" ROF IV.

Plaintiff claims that defendants' recommendation in August 2005 to stop work on ROF IV and resign in November led to his expulsion and termination for cause, and resulting losses. He alleges that it was Album who told him to resign in the middle of negotiations, start his new venture (i.e., Westport), and issue the press release announcing the formation of the Westport

---

* Although the interim award ordered plaintiff to disclose all information necessary for OCM to decide whether to purchase the 60 Main Street property, plaintiff divested himself of controlling interest in Westport, thereby "thwart[ing]" any potential remedy with regard to 60 Main Street.

entity. He contends that had he not resigned, OCM might not have litigated against him for breach of fiduciary duty and he might have avoided his subsequent losses.

On April 1, 2009, defendants moved to dismiss the complaint. Relying on specific findings made at arbitration, the motion court granted the motion pursuant to CPLR 3211 (a) (7) on the ground that plaintiff failed to state a cause of action.

On appeal, plaintiff argues that the motion court, inter alia, erred in relying upon the final arbitration award, and erroneously dismissed the complaint when issues of fact remained. For the reasons set forth below, we find that, contrary to plaintiff's contention, the motion court properly applied arbitral findings to plaintiff's malpractice claim and all factual issues were resolved as a matter of law (*West 64th St., LLC v Axis U.S. Ins.*, 63 AD3d 471 [2009]).

It is well settled that prior arbitration awards may be given preclusive effect in a subsequent judicial action (CPLR 3211 [a] [5]; *Matter of Metro-North Commuter R.R. Co. v New York State Exec. Dept. Div. of Human Rights*, 271 AD2d 256, 257 [2000]). Because mutuality of parties is not required, a defendant may preclude a plaintiff from relitigating an issue resolved against that plaintiff in an earlier arbitration with a different defendant (*see B. R. DeWitt, Inc. v Hall*, 19 NY2d 141 [1967]; *Prospect Owners Corp. v Tudor Realty Servs. Corp.*, 260 AD2d 299 [1999], citing *Corto v Lefrak*, 203 AD2d 94 [1994], *lv dismissed* 86 NY2d 774 [1995]; *see e.g. Spasiano v Provident Mut. Life Ins. Co.*, 2 AD3d 1466 [2003]; *Samhammer v Home Mut. Ins. Co. of Binghamton*, 120 AD2d 59 [1986]). Thus, collateral estoppel arising out of arbitral findings may be applied offensively to bar the legal malpractice claim in this case (*see e.g. GUS Consulting GmbH v Chadbourne & Parke LLP*, 74 AD3d 677 [2010]).

Here, the arbitrator found that plaintiff's dilatory conduct with regard to ROF IV, self-dealing with regard to the 60 Main Street opportunity, and misappropriation of OCM's financial information constituted breaches of his fiduciary and contractual duties. The arbitrator specifically found that "[b]eginning in early 2005" plaintiff was "stalling the launch of [ROF] IV so that he could deflect possible investment sources to the new entity he was forming." The arbitrator found that during the summer of 2005, plaintiff formed Westport Capital Partners, LLC, and began collecting OCM information to take with him to his new venture. He requested a list of all of his contacts at OCM and copies of quarterly investment letters, and obtained detailed information about OCM investments made by specific investors.

Relying on the arbitrator's factual findings, the motion court determined that plaintiff's course of misconduct began well before any purported advice received by plaintiff from defendants in August 2005. The court observed that there was no indication that "defendants knew of, or advised plaintiff to purchase 60 Main Street" for Westport, or to "collect[ ] OCM's financial information for his personal use." The motion court concluded that these activities, which the arbitrator found to be breaches of fiduciary duty and/or contractual duty, would have resulted in his justifiable expulsion regardless of his resignation.

The factual findings and issues resolved by the arbitrator establish that it was plaintiff's own misconduct prior to and apart from any advice from defendants that led to his termination for cause. The plaintiff had a full and fair opportunity to litigate these facts and issues at arbitration, and the application of collateral estoppel precludes him from relitigating them in this malpractice action (*see e.g. GUS Consulting GmbH*, 74 AD3d 678-679; *Fajemirokun v Dresdner Kleinwort Wasserstein Ltd.*, 27 AD3d 320 [2006], *lv denied* 7 NY3d 705 [2006]).

Because the arbitral findings establish as a matter of law that defendants were not the cause of plaintiff's losses, the motion court properly dismissed plaintiff's complaint (*see Tydings v Greenfield, Stein & Senior, LLP*, 43 AD3d 680, 682 [2007], *affd* 11 NY3d 195 [2008]). Plaintiff's claim that had he not resigned, he may have been able to hide his fraudulent activities, continue to collect fees, and reach an agreement with OCM is purely speculative and does not raise a triable issue of fact (*see AmBase Corp. v Davis Polk & Wardwell*, 8 NY3d 428, 434-436 [2007]; *GUS Consulting GmbH*, 74 AD3d at 679; *Phillips-Smith Specialty Retail Group II v Parker Chapin Flattau & Klimpl*, 265 AD2d 208, 210 [1999], *lv denied* 94 NY2d 759 [2000]).

Plaintiff's causes of action for breach of fiduciary duty and breach of contract were also properly dismissed by the motion court as duplicative, since they arose from the same facts as the legal malpractice claim and allege similar damages (*see InKine Pharm. Co. v Coleman*, 305 AD2d 151, 152 [2003]).

We have considered plaintiff's remaining arguments and find them unavailing. Concur—Andrias, J.P., Friedman, Catterson, Renwick and DeGrasse, JJ.