[960 NYS2d 388]

Cosmetics Plus Group, Ltd., et al., Appellants, v Paul Traub et al., Respondents.

First Department, February 28, 2013

**APPEARANCES OF COUNSEL**

*Martin J. Rubenstein*, Staten Island, for appellants.

*Hinshaw & Culbertson, LLP*, New York City (*Richard Supple* of counsel), for respondents.

**OPINION OF THE COURT**

Mazzarelli, J.P.

In August 2001, plaintiffs, business entities that operated retail stores and their principals, retained defendant law firm Traub, Bonaquist & Fox, LLP (TBF) to commence a chapter 11 bankruptcy proceeding in the Southern District of New York.

One month later, two of the stores were destroyed in the terrorist attack at the World Trade Center. Plaintiffs retained special counsel to bring an adversary action in the bankruptcy court against their insurer, which refused to pay a claim under a business interruption policy. The adversary action settled on January 7, 2008, for the sum of $350,000, subject to the approval of the bankruptcy court. On February 26, 2008, the bankruptcy court issued an order approving the settlement. The approved settlement agreement provided that the proceeds would be delivered to plaintiffs in care of TBF. On March 6, 2008, the proceeds were delivered to Dreier LLP, the firm to which individual defendants Traub and Fox had moved their practice in August 2006. The funds were deposited into Dreier LLP's client trust escrow account number 5966 (the 5966 account). Unbeknownst at the time to plaintiffs, Traub and Fox or apparently anyone else, Marc Dreier, the sole equity owner of his eponymous law firm, was actively engaged in a Ponzi scheme which involved the sale of fraudulent notes. Much of the money entrusted to Marc Dreier by the defrauded investors was deposited by him into the 5966 account.

Defendants could not release the escrowed funds to their clients until the bankruptcy case was formally dismissed. They sought a "structured dismissal" of the case, negotiating with the creditors' committee and the U.S. trustee as to when and how the various interested parties would be paid by the estate. Defendants had advised plaintiffs that winding up the estate could "take some time." On September 26, 2008, after agreement with all of the necessary parties had been reached, Fox submitted a motion to the bankruptcy court to approve the voluntary dismissal of the bankruptcy proceeding. The bankruptcy court approved the dismissal in an order dated October 30, 2008. The order provided, in relevant part, for distribution of the cash held for plaintiffs within 15 days, with U.S. trustee fees being paid first, administrative expenses in the amount of $61,972.94 second, and all remaining cash to be paid to the secured creditors[1] in partial satisfaction of the secured claim.

Following the bankruptcy dismissal order, Fox distributed

---

1. At some point during the bankruptcy, the individual plaintiffs took an assignment of the entities' debts from their secured creditors, thereby entitling them to any funds in the bankruptcy estate that would otherwise have been payable to the secured creditors.

$61,972.94 from a TBF escrow account[2] to pay the administrative fees, which largely consisted of its own legal fees. On December 2, 2008, after reconciliation of outstanding accounts with the U.S. trustee had been finalized, $3,475 was paid out of the TBF escrow account to the U.S. trustee in full satisfaction of fees. The remaining cash in the TBF escrow account belonged to plaintiffs, and was paid to them. On the same date, Fox sent an internal email to Dreier LLP accounting personnel requesting that a check payable to plaintiffs for $350,000 be drawn from the 5966 account and forwarded to Fox for delivery to plaintiffs.

Unfortunately and coincidentally, Marc Dreier was arrested the next day. Upon learning of the arrest, Traub immediately repeated the demand that Dreier LLP transfer funds being held in the 5966 account to the TBF escrow account. Dreier LLP acceded to this request, and the next day wired $441,145.58 to the TBF escrow account. These monies included the settlement payment to plaintiffs, as well as funds belonging to other clients of defendants. After the monies were transferred, Fox and Traub resigned from Dreier LLP and returned to TBF. On December 10, 2008, a federal district judge appointed a receiver for Dreier LLP and restrained the firm's assets. On December 16, 2008, Dreier LLP filed for bankruptcy.

Plaintiffs demanded that the settlement funds being held in the TBF escrow account be released to them. In response, Fox sent them an email on December 19, 2008 asserting that while those funds were "presently . . . safe in the TB&F escrow account," they could not be released, because other former Dreier LLP clients were likely to assert competing claims for the monies that had been held in the 5966 account. Fox assured plaintiffs that he and Traub were "using every means and resource available to obtain the earliest possible release of the escrow monies." On February 27, 2009, following the directions of the Dreier LLP trustee, TBF transferred its own escrow funds that had been in the Dreier LLP escrow account to the Dreier LLP bankruptcy trustee, to be held in a separate escrow account under the auspices of the bankruptcy court. Plaintiffs ended their attorney-client relationship with Fox and Traub shortly thereafter.

In this action plaintiffs assert causes of action for negligence and legal malpractice, breach of fiduciary duty, breach of Judi-

---

2. This was a TBF escrow account that had been established before defendants Fox and Traub moved their practice to Dreier LLP.

ciary Law § 487, and violations of partnership law. They allege that the delay between approval of the settlement with their insurer and the dismissal of the bankruptcy proceeding was inordinately long and that TBF should have acted more diligently in ensuring release of the funds. They also claim that TBF improperly violated the dismissal order by permitting more than 15 days to elapse before the settlement funds were disbursed. Plaintiffs further allege that after Dreier LLP transferred the settlement funds from the 5966 account into the TBF escrow account, defendants wrongly decided to remit all of plaintiffs' funds to the Dreier LLP bankruptcy trustee. They claim that TBF should first have sought permission from the bankruptcy judge who had overseen plaintiffs' own bankruptcy proceeding.

Plaintiffs moved for summary judgment on the first three causes of action in their complaint. Defendants opposed the motion and cross-moved for summary judgment dismissing the complaint in its entirety. In support, defendants submitted an expert report from Francis G. Conrad, a retired bankruptcy court judge. Conrad opined that the time taken to negotiate and present the structured dismissal did not deviate from the standard of care and skill of an average New York bankruptcy attorney, and that defendants acted properly in transferring the funds to the Dreier trustee. The expert also opined that distribution deadlines are arbitrarily established and routinely missed. Plaintiffs, in reply, did not attempt to rebut Conrad's opinion by submitting an expert report of their own.

The court denied plaintiffs' summary judgment motion and granted defendants' motion dismissing the complaint in its entirety (2011 NY Slip Op 32149[U] [2011]). The court dismissed the claim that defendants should have proceeded more quickly to obtain the dismissal of the bankruptcy case following the insurance settlement. It credited Fox's explanation as to why this took the time it did, as well as defendants' expert report that the time taken did not deviate from what can reasonably be expected in bankruptcy practice. With respect to the claim that defendants were negligent in failing to distribute the monies within the 15 days provided for in the dismissal order, the court noted that plaintiffs had failed to dispute defendants' representation that the U.S. trustee did not finalize the information necessary to be paid until early December 2008. The court held that defendants' failure to comply strictly with the time deadlines was not malpractice, as the delays were not attributable to any neglect by defendants.

With respect to the argument that defendants wrongfully transferred the settlement funds to the Dreier LLP bankruptcy trustee, the court found that this claim was premised upon a presumption that plaintiffs are indisputably entitled to the funds, whereas the ultimate resolution of that issue is subject to the determination in the Dreier LLP bankruptcy proceeding. The court found that when the funds were given to defendants after December 3, 2008 by Dreier LLP, they were not to be distributed to plaintiffs, but to be held in escrow as subject to potential competing claims. The court cited the expert opinion that once the trustee requested a turnover of the funds, defendants had no reasonable basis to refuse the request. Noting that plaintiffs did not provide an expert opinion to the contrary, the court dismissed the malpractice claim.

The court also rejected plaintiffs' argument that defendants' expert report should not be considered because it was not in appropriate form, and found that there was no basis to discredit the expert opinion. The court held that the fact that defendants' "expert opinion is properly before the court and the plaintiff[s] have not proffered a contrary expert opinion, is a separate, independent basis for the granting of the cross-motion and denying the motion in chief" (2011 NY Slip Op 32149[U], *14).

The court dismissed the claims for breach of fiduciary duty, finding them duplicative of the malpractice claims. Finally, the court dismissed the claims alleging that defendants violated Judiciary Law § 487, holding that there "is no evidence that any of the defendants actually did or intended to deceive the court," there "is no evidence that the bankruptcy proceeding was willfully delayed in order for defendants to gain some personal advantage," and plaintiffs did not contradict defendants' showing that no delays were caused by their conduct (*id.* at *15). The court noted that while defendants paid themselves from the TBF escrow monies before they distributed the net proceeds of the estate to plaintiffs, that order of distribution and the amount of fees was approved by the bankruptcy court.

To prevail on a claim for legal malpractice, a plaintiff must demonstrate that the attorney failed to exercise that degree of care, skill and diligence commonly possessed by a member of the legal profession, and that this failure caused damages (*see AmBase Corp. v Davis Polk & Wardwell*, 8 NY3d 428, 434 [2007]). The plaintiff must establish a "but for" relationship between the malfeasance or nonfeasance alleged and the damage

sustained (*see* PJI 2:152; *Waggoner v Caruso*, 14 NY3d 874 [2010]). A lawyer seeking summary judgment dismissing a legal malpractice claim cannot satisfy its prima facie burden without providing an expert opinion that any or all of the foregoing elements were not met, so long as the subject matter is not within the ken of an ordinary person (*see Suppiah v Kalish*, 76 AD3d 829, 832 [1st Dept 2010]). At the same time, a plaintiff in a malpractice action cannot create an issue of fact without his or her own expert's submission rebutting defendant's expert's opinion (*see Orchard Motorcycle Distribs., Inc. v Morrison Cohen Singer & Weinstein, LLP*, 49 AD3d 292, 293 [1st Dept 2008]).

■ With respect to whether defendants were responsible for the delay in the insurance settlement proceeds being released to plaintiffs, an expert opinion was necessary to explain whether defendants did everything within their control to ensure timely payment of the funds. The particular vagaries of how long it takes to procure the structured dismissal of a bankruptcy case are not within the usual knowledge of an ordinary person, nor are they purely a matter of bankruptcy law which the court could have determined without the benefit of an expert opinion (*compare Wo Yee Hing Realty Corp. v Stern*, 99 AD3d 58, 63 [1st Dept 2012] [expert opinion was not required where "the mechanics of the governing legal framework (of a 'like-kind exchange' under Internal Revenue Code [26 USC] § 1031) (we)re undisputed, and the issue of proximate cause turn(ed) on the discrete factual question of whether plaintiff took the requisite actions to identify and purchase a suitable replacement property in the required time frame"]). Defendants' expert's report adequately shifted the burden to plaintiffs by explaining that defendants acted reasonably in seeking a structured dismissal of plaintiffs' bankruptcy case, and that it was not unusual for it to have taken several months before a motion to dismiss the proceeding could actually be presented to the bankruptcy judge. By failing to submit their own expert's report, plaintiffs failed to create an issue of fact whether the funds could have been paid out any earlier.

■ Defendants' expert also adequately explained that defendants' failure to ensure that the settlement funds were paid out within 15 days of dismissal of the bankruptcy case, as ordered by the bankruptcy judge, was not unreasonable under the circumstances. In any event, and as the expert noted, even if defendants could have somehow ensured the release of the settlement funds as early as plaintiffs claim was possible, the

funds would have been subject to an avoidance action by the Dreier LLP bankruptcy trustee. That is because the funds would have been considered the property not of plaintiffs, but of the Dreier LLP bankruptcy estate. The Second Circuit Court of Appeals has expressly held that, whether or not a person whose assets were intermingled with the assets of victims of a Ponzi scheme could trace or isolate his or her assets, those assets were subject to pro rata distribution among all of the victims of the scheme (see Securities & Exch. Commn. v Credit Bancorp, Ltd., 290 F3d 80, 88-89 [2d Cir 2002]). It matters not if, like here, a person whose assets were commingled with the proceeds of investors in the scheme was not an investor in the scheme himself. Indeed, that argument has been made in the context of the Dreier LLP bankruptcy and been rejected (see In re Dreier LLP, 429 BR 112, 134-135 [SD NY 2010] [rejecting claim of Dreier client that, because he was not an investor in the Ponzi scheme and was therefore "uniquely situated," the settlement monies being held for him in the 5966 account were not subject to pro rata distribution]).

By the same token, we reject plaintiffs' argument that defendants should have sought permission from the bankruptcy judge who ordered release of the settlement funds to them before turning those funds over to the Dreier LLP bankruptcy trustee. In the face of the case law cited above, plaintiffs offer no compelling reason why that judge would have seen fit not to order defendants to comply with the Dreier LLP bankruptcy trustee's request. Where the failure to perform an act alleged to constitute legal malpractice would have been futile, no claim against the attorneys can be maintained (see Hefter v Citi Habitats, Inc., 81 AD3d 459 [1st Dept 2011]; Schorsch v Moses & Singer LLP, 60 AD3d 557 [1st Dept 2009]).

The cases which plaintiffs cite in arguing that the settlement funds became theirs at the time they were originally placed in the 5966 account, and so were outside the 90-day Dreier LLP bankruptcy preference avoidance window, are inapposite. In Matter of Newcomb (744 F2d 621 [8th Cir 1984]), the United States, which had recovered a judgment against the debtor prior to his declaring bankruptcy, agreed to have the funds it recovered placed in escrow pending the debtor's appeal of the judgment. The court found that the transfer occurred at the time of the escrow, outside of the 90-day preference window, because the debtor retained only a contingent right to the funds. The fact that the event which triggered release of the funds oc-

curred during the preference period was irrelevant. Similarly, in *Matter of O.P.M. Leasing Servs., Inc.* (46 BR 661 [SD NY 1985]), money was placed in escrow by the debtor, an equipment lessor, to secure its obligation to reimburse a lessee for a certain lease termination. By the same reasoning as *Newcomb*, the bankruptcy trustee was found to have no right to recover the funds, even though the debtor's default on its reimbursement obligation, which triggered release of the escrow, occurred during the preference period.

What separates this case from the cases cited by plaintiffs is the nature of the escrow account in which the subject funds were placed. Because the 5966 account had been used by Marc Dreier to operate his Ponzi scheme, the settlement funds became part of the pool to be distributed on a pro rata basis to the victims of the fraud (*see Securities & Exch. Commn. v Credit Bancorp.*, 290 F3d at 89-90). Accordingly, the analysis performed in *Newcomb* and *O.P.M. Leasing Servs.* as to when the funds became the property of the intended beneficiary of the funds is irrelevant. Further, contrary to plaintiffs' argument, it makes no difference that when defendants transferred the funds to the Dreier LLP bankruptcy trustee they had been transferred to the TBF escrow account and were no longer in the escrow account which Marc Dreier had used to perpetrate his Ponzi scheme. Plaintiffs do not dispute defendants' position that the funds were transferred into the TBF escrow account with the understanding that they would not be released to plaintiffs without prior approval by whoever was ultimately assigned the tasks of sorting out the various claims which were sure to be made against the Dreier LLP bankruptcy estate.

█ Finally, we find that the cause of action for breach of fiduciary duty was properly dismissed as duplicative of the legal malpractice claim. It arose out of the same facts as the legal malpractice claim and did not involve any damages that were separate and distinct from those generated by the alleged malpractice (*see Bernard v Proskauer Rose, LLP*, 87 AD3d 412, 416 [1st Dept 2011]; *Lusk v Weinstein*, 85 AD3d 445 [1st Dept 2011], *lv denied* 17 NY3d 709 [2011]). Dismissal of the Judiciary Law § 487 claim was also warranted, as it is unsupported by evidence of a "chronic and extreme pattern of legal delinquency" (*Solow Mgt. Corp. v Seltzer*, 18 AD3d 399, 400 [1st Dept 2005], *lv denied* 5 NY3d 712 [2005]).

We have considered plaintiffs' remaining arguments and find them unavailing.

Accordingly, the judgment of the Supreme Court, New York County (Judith J. Gische, J.), entered September 30, 2011, to the extent appealed from as limited by the briefs, dismissing the complaint pursuant to an order, same court and Justice, entered August 5, 2011, which denied plaintiffs' motion for summary judgment on their causes of action for negligence and legal malpractice, breach of fiduciary duty, and violation of Judiciary Law § 487, and granted defendants' cross motion for summary judgment dismissing said claims, should be affirmed, with costs. The appeal from the aforesaid order should be dismissed, without costs, as subsumed in the appeal from the judgment.

SWEENY, MOSKOWITZ, RENWICK and FREEDMAN, JJ., concur.

Judgment, Supreme Court, New York County, entered September 30, 2011, affirmed, with costs. Appeal from order, same court, entered August 5, 2011, dismissed, without costs, as subsumed in the appeal from the judgment.