# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**452**

**CA 14-02068**

PRESENT: SCUDDER, P.J., CENTRA, PERADOTTO, VALENTINO, AND WHALEN, JJ.

---

BENEDETTA MELNICK, FRANK H. BOEHM, JR.
AND CREATIVE NEUROSCIENCE APPLICATIONS, LLC,
PLAINTIFFS-APPELLANTS,

V                                          MEMORANDUM AND ORDER

PAUL J. FARRELL, ESQ., THE FARRELL LAW FIRM, LLP,
AND DILWORTH & BARRESE, LLP,
DEFENDANTS-RESPONDENTS.

---

SMITH, SOVIK, KENDRICK & SUGNET, P.C., SYRACUSE (KEVIN HULSLANDER OF
COUNSEL), FOR PLAINTIFFS-APPELLANTS.

COSTELLO, COONEY & FEARON, PLLC, SYRACUSE (ROBERT J. SMITH OF
COUNSEL), FOR DEFENDANTS-RESPONDENTS.

---------------------------------------------------------------------

Appeal from an order of the Supreme Court, Oneida County (Norman I. Siegel, J.), entered February 10, 2014. The order granted the motion of defendants for summary judgment, dismissed the amended complaint and awarded defendants judgment for costs and disbursements.

It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.

Memorandum: Plaintiffs commenced this legal malpractice action alleging that defendants were negligent with respect to the negotiation of an agreement to license and sell intellectual property for a medical device developed by plaintiffs Frank H. Boehm, Jr. and Benedetta D. Melnick and transferred to plaintiff Creative Neuroscience Applications, LLC (CNA). Supreme Court granted defendants' motion seeking summary judgment dismissing the amended complaint both as time-barred and on the merits. Although we conclude that the court erred in determining that the action is time-barred, we agree with the court on the merits, and we therefore affirm.

"An action to recover damages for legal malpractice accrues when the malpractice is committed" (*Shumsky v Eisenstein*, 96 NY2d 164, 166). It is undisputed that defendants represented plaintiffs with respect to the agreement, executed on December 31, 2004 and the first amendment of the agreement, executed on June 28, 2005, and that the action was commenced on October 10, 2010. Defendants thus met their initial burden with respect to the statute of limitations by establishing that the action was commenced more than three years after the alleged malpractice (*see* CPLR 214 [6]). We nevertheless conclude

that plaintiffs raised an issue of fact whether the continuous representation doctrine tolled the statute of limitations (*see Electron Devices [USA] LLC v Menter, Rudin & Trivelpiece, P.C.*, 71 AD3d 1512, 1512-1513).  Plaintiffs established that, in May 2008, Boehm and Melnick discussed with Paul J. Farrell, Esq. (defendant) their concerns regarding whether certain events would occur so as to trigger the future payments provisions of the first amendment of the agreement.

On the merits, plaintiffs allege that defendants engaged in legal malpractice by failing to include in the agreement, or in the first amendment of the agreement, a provision protecting their financial interest in the intellectual property in the event that the buyer became insolvent or filed for bankruptcy protection (bankruptcy/buyback provision).  In order to establish a cause of action for legal malpractice, plaintiffs must prove that the attorney failed to exercise the degree of care, skill and diligence commonly possessed by a member of the legal community; that the failure to do so proximately caused plaintiffs' damages; and that plaintiffs would have been successful in the underlying action if the attorney had exercised due care (*see Rudolf v Shayne, Dachs, Stanisci, Corker & Sauer*, 8 NY3d 438, 442; *Phillips v Moran & Kufta, P.C.*, 53 AD3d 1044, 1044-1045).  "To succeed on a motion for summary judgment dismissing the complaint in a legal malpractice action, the defendant must present evidence in admissible form establishing that the plaintiff is unable to prove at least one essential element of his or her cause of action alleging legal malpractice" (*Scartozzi v Potruch*, 72 AD3d 787, 789-790).

It is undisputed that the agreement and subsequent amendments, some of which were negotiated solely by Boehm, did not provide for the financial protection of plaintiffs with respect to the intellectual property in the event that the buyer filed for bankruptcy protection, which occurred here.  It is also undisputed that plaintiffs received the scheduled payments pursuant to the agreement and subsequent amendments, but they did not receive any future payments pursuant to the amended agreement because the necessary triggering events did not occur.  Further, it is undisputed that, in July 2008, plaintiffs retained different counsel and engaged in mediation with the buyer, which resulted in a settlement agreement that superseded the original agreement and amendments.  The settlement agreement also did not contain a bankruptcy/buyback provision.  Plaintiffs thereafter commenced a breach of contract action with respect to the settlement agreement in federal court, which ultimately was dismissed, and, while that action was pending, the buyer applied for bankruptcy protection. Although CNA was listed as an unsecured creditor in the bankruptcy proceeding, plaintiffs did not receive any proceeds from the sale of the buyer's assets.  Those assets included over 50 patents, including the patent assigned by plaintiffs, products and inventory.  The assets were sold for $9.2 million, which was not sufficient to satisfy the claims of secured creditors.  Plaintiffs thereafter commenced this action seeking damages in the amount of $9.2 million.

In support of their motion seeking summary judgment dismissing

the amended complaint, defendants provided, inter alia, the deposition testimony of defendant in which he stated that he had previously represented plaintiffs with respect to a license and assignment agreement for a different patent in which a bankruptcy/buyback provision was included. He testified that Boehm was primarily responsible for negotiating and structuring the agreement and first amendment thereof with the buyer and that he advised Boehm to include a bankruptcy/buyback provision similar to what had been included in the previous agreement. Defendant testified that, when he spoke to the buyer while drafting the agreement for plaintiffs, he "pushed" for such a provision, but the buyer refused to include the provision. Defendants also provided the affidavit of the buyer's chief executive officer, stating that Boehm was primarily responsible for negotiating the agreement and that, although Boehm raised the issue of the bankruptcy/buyback provision several times, he informed Boehm and defendant that a bankruptcy/buyback provision "would be an absolute deal breaker." In addition, defendants provided the affidavit of a nonparty attorney with whom Boehm consulted, who stated that he knew that defendant explicitly addressed the issue of a bankruptcy/buyback provision with Boehm and that both defendant and Boehm advised him that the buyer "adamantly refused" to include such a provision in the agreement.

Defendants also presented excerpts from the depositions of Boehm and Melnick. Boehm testified that he knew that the buyer refused to include a bankruptcy/buyback provision in the agreement and that plaintiffs "were okay with that" because "it was a good deal, and we didn't want to have that as a sticking point." Melnick testified that she had concerns that the agreement provided that the licensing agreement converted to an assignment after a certain sum had been paid by the buyer and plaintiffs therefore would not have use of the technology, but that she was "outvoted" by Boehm. Both Boehm and Melnick testified that defendant advised them to sign the agreement if they wanted to close the deal with the buyer.

We conclude that defendants met their initial burden by establishing that they did not fail to exercise the degree of care, skill and diligence commonly possessed by members of the legal community with respect to their representation of plaintiffs (*cf*. *Scartozzi*, 72 AD3d at 790; *generally Rudolf*, 8 NY3d at 442). Defendants established that defendant recommended that a bankruptcy/buyback provision be included in the agreement, that the buyer refused to include the provision, and that plaintiffs were aware of the buyer's refusal and nevertheless executed the agreement and the first amendment without it. Even assuming, arguendo, that defendant should have advised plaintiffs not to execute the agreement without the bankruptcy/buyback provision, we conclude that defendants established "a 'reasonable strategic explanation' for the alleged negligence" (*Ackerman v Kesselman*, 100 AD3d 577, 579). We further conclude that defendants established that any negligence was not a proximate cause of plaintiffs' alleged damages because plaintiffs previously had entered into a similar agreement that included the relevant provision, and Boehm and Melnick knew that the agreement with this buyer would not include such a provision. Further, defendants

established that plaintiffs would not have prevailed in the underlying bankruptcy proceeding, even with a provision placing them in a secured creditor position, because they had been paid $885,000 pursuant to the terms of the agreement and the first amendment of the agreement, and none of the triggering events for future payments had occurred.  We therefore conclude that defendants established that plaintiffs would be "unable to prove at least one essential element of [their] cause of action alleging legal malpractice" (*Scartozzi*, 72 AD3d at 790).

In opposition to the motion, plaintiffs failed to raise an issue of fact.  They provided the deposition testimony of Boehm, Melnick and defendant, as well as the affidavits of Boehm and Melnick.  Contrary to plaintiffs' contention, where, as here, the underlying facts are essentially undisputed and the "issue of proximate cause turns on the discrete factual question" whether plaintiffs' decision to execute the agreement and first amendment was based upon defendant's advice, or lack thereof, regarding the consequences of executing the agreement without the bankruptcy/buyback provision, the failure of defendants to provide an expert affidavit on the degree of care, skill and diligence commonly possessed by a member of the legal community was not fatal to their motion (*Wo Yee Hing Realty Corp. v Stern*, 99 AD3d 58, 63; *cf. Suppiah v Kalish*, 76 AD3d 829, 832; *see generally Cosmetics Plus Group, Ltd. v Traub*, 105 AD3d 134, 141, *lv denied* 22 NY3d 855).  The respective affidavits of Boehm and Melnick stating that, if they had known that the inclusion of a bankruptcy/buyback provision was a "deal breaker," CNA may not have executed the agreement or the first amendment are not sufficient to defeat the motion inasmuch as they are self-serving and contradicted by prior sworn deposition testimony (*see Richmond Farms Dairy, LLC v National Grange Mut. Ins. Co.,* 60 AD3d 1411, 1415).  We therefore conclude that plaintiffs failed to raise an issue of fact sufficient to defeat the motion.

Entered:  May 1, 2015                        Frances E. Cafarell
                                            Clerk of the Court